## UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL NADEAU** ) | |
| **140 Deer Run** ) | |
| **Colchester, CT 06415** ) | |
| **WAYNE GAGNE** ) | |
| **49 Tenby Drive** ) | |
| **Nashua, NH 03062** ) | |
| **PATRICK FARRELL** ) | |
| **20323 Pinecreek Ridge Lane** ) | |
| **Klein, TX 77397** ) | |
| **and all other similarly** ) | |
| **situated** ) | |
| ) | |
| **Plaintiffs,** ) | **CASE NO.: 1:26-cv-00923-MJS** |
| ) | |
| **vs.** ) | |
| ) | |
| **DANAHER CORPORATION** ) | |
| **2200 Pennsylvania Avenue NW, Suite 800W** ) | |
| **Washington DC 20037** ) | |
| **PALL CORPORATION** ) | |
| **25 Harbor Park Drive** ) | |
| **Port Washington, NY 11050** ) | |
| **BECKMAN COULTER, INC.** ) | |
| **250 S Kraemer Blvd** ) | |
| **Brea, CA 92821** ) | |
| **GLOBAL LIFE SCIENCES** ) | |
| **SOLUTIONS USA LLC d/b/a CYTIVA** ) | |
| **100 Results Way** ) | |
| **Marlborough, MA 01752** ) | |
| **AB SCIEX LLC d/b/a SCIEX** ) | |
| **250 Forest Street** ) | |
| **Marlborough, MA 01752** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' MOTION TO DISMISS

Defendants Pall Corporation, Beckman Coulter, Inc., Global Life Sciences Solutions USA LLC d/b/a Cytiva, AB SCIEX LLC d/b/a SCIEX, and improperly named Danaher Corporation, by undersigned counsel, hereby move this Court to dismiss Plaintiffs' Complaint.[1] In support of this Motion, Defendants respectfully refer the Court to the accompanying Statement of Points and Authorities.

WHEREFORE, Defendants request that the Court:

1.  Grant Defendants' Motion and dismiss Plaintiffs' Complaint; and

2.  Grant Defendants such other and further relief as the Court may deem proper.

---

[1] Defendants Pall Corporation, Beckman Coulter, Inc., Global Life Sciences Solutions USA LLC d/b/a Cytiva, and AB SCIEX LLC d/b/a SCIEX specially appear for purposes of making this Motion. As argued in the accompanying Statement of Points and Authorities, these Defendants maintain that the Court lacks personal jurisdiction over them and any limited litigation activity of these Defendants to date shall not be construed as a waiver, including this Motion. *See, e.g., Lemon v. Kramer*, 270 F. Supp. 3d 125, 138 (D.D.C. 2017) (ruling that "Defendants have not waived their right to challenge this Court's personal jurisdiction by appearing before the Court to file a motion to dismiss").

Dated:  May 29, 2026

Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Samantha L. Brooks*
Samantha L. Brooks, DC Bar 1033641
sbrooks@seyfarth.com
SEYFARTH SHAW LLP
975 F. Street, N.W.
Washington, DC  20004
Telephone:    (202) 463-2400
Facsimile:    (202) 828-5393

Christopher J. DeGroff, *pro hac vice forthcoming*
CDeGroff@seyfarth.com
Michael D. Jacobsen, *pro hac vice forthcoming*
mjacobsen@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive
Chicago, Illinois  60606
Telephone:    (312) 460-5000
Facsimile:    (312) 460-7000

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true copy of the foregoing Defendants' Motion To Dismiss was filed by

CM/ECF, this 29th day of May 2026, with electronic notification to all counsel of record.


By:  */s/ Samantha L. Brooks*

Samantha L. Brooks, DC Bar 1033641
sbrooks@seyfarth.com
SEYFARTH SHAW LLP
975 F. Street, N.W.
Washington, DC  20004
Telephone:    (202) 463-2400
Facsimile:    (202) 828-5393

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| )<br>)<br>**MICHAEL NADEAU** )<br>**140 Deer Run** )<br>**Colchester, CT 06415** )<br>**WAYNE GAGNE** )<br>**49 Tenby Drive** )<br>**Nashua, NH 03062** )<br>**PATRICK FARRELL** )<br>**20323 Pinecreek Ridge Lane** )<br>**Klein, TX 77397** )<br>**and all other similarly** )<br>**situated** )<br>)<br>       **Plaintiffs,** )<br>)<br>      **vs.** )<br>)<br>**DANAHER CORPORATION** )<br>**2200 Pennsylvania Avenue NW, Suite 800W** )<br>**Washington DC 20037** )<br>**PALL CORPORATION** )<br>**25 Harbor Park Drive** )<br>**Port Washington, NY 11050** )<br>**BECKMAN COULTER, INC.** )<br>**250 S Kraemer Blvd** )<br>**Brea, CA 92821** )<br>**GLOBAL LIFE SCIENCES** )<br>**SOLUTIONS USA LLC d/b/a CYTIVA** )<br>**100 Results Way** )<br>**Marlborough, MA 01752** )<br>**AB SCIEX LLC d/b/a SCIEX** )<br>**250 Forest Street** )<br>**Marlborough, MA 01752** )<br>)<br>      **Defendants.** )<br>)<br>)<br>) | **CASE NO.: 1:26-cv-00923-MJS** |

### STATEMENT OF POINTS AND AUTHORITIES
### IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Pall Corporation ("Pall"), Beckman Coulter, Inc. ("Beckman Coulter"), Global Life Sciences Solutions USA LLC d/b/a Cytiva ("Cytiva"), AB SCIEX LLC d/b/a SCIEX ("SCIEX"), and improperly named Danaher Corporation ("Danaher") respectfully submit this Statement of Points and Authorities in support of their Motion to Dismiss.

### PRELIMINARY STATEMENT

Defendants' Motion should be granted and this matter dismissed because Plaintiffs assert sprawling nationwide discrimination class claims but fail to offer even the basic facts and legal elements necessary to support them.

Plaintiffs are a handful of white men who applied for jobs with several different entities and were not hired. Plaintiffs complain that other individuals received interviews and/or jobs instead of them but do not allege anything about these alleged comparables. Plaintiffs plead nothing about their cohorts' race, gender, or qualifications. Plaintiffs nevertheless baldly conclude that "they have been discriminated against based on race in violation of 42 U.S.C. § 1981 and sex in violation of Title VII" (and age, according to the Charges of Discrimination that Plaintiffs filed with the U.S. Equal Employment Opportunity Commission ("EEOC Charges")). (Complt., ¶ 1.) Plaintiffs fail to plead sufficient facts to create a plausible inference that they were discriminated against in any respect. They simply allege that they are part of a protected class and were not hired, so it must be discrimination. That is not enough.

Plaintiffs go on to ask this Court to certify seven nationwide classes of white men and one nationwide class of people allegedly not defined as persons of color who were not hired by Defendants. Importantly, Defendants are separate and distinct entities and employers following their own separate and distinct processes to fill separate and distinct roles. While Plaintiffs

1

attempt to paint hiring decisions with a broad brush, Plaintiffs simultaneously concede that "hiring decisions" at these entities are made by numerous individual hiring managers who "exercised" their "discretion" on an "individualized" basis.  (*See id.*, ¶¶ 60, 64-65.)  Plaintiffs' Complaint confirms on its face that their claims can be adjudicated only though highly individualized inquiries.

Plaintiffs attempt to justify their overreaching Complaint by alleging that a "Diversity, Equity and Inclusion Policy ('DEI Policy')" discriminates against white men by excluding them from hiring opportunities that women and people of color receive instead.  (*See id.*, p. 1, ¶ 6.) Plaintiffs claim that aspirational efforts to broaden the range of talent pools and maximize the chances of hiring the most qualified candidate, irrespective of sex or race, constituted sex and race discrimination.  Plaintiffs purposely distort those aspirational recruiting efforts to claim, without any support, that this alleged policy "establishes hiring quotas[,] is the source of systemic discrimination" against white men, and gave "preferential consideration" to women and people of color.  (*See id.*, p. 1, ¶¶ 6, 44.)  These conclusory allegations do not establish that any such policy existed, and Plaintiffs do not attach a copy of any such alleged policy to their Complaint.  Indeed, the documents to which they refer actually contradict Plaintiffs' core allegations.

Contrary to Plaintiffs' speculation, they must concede that these documents do *not* establish quotas, do *not* state that women and people of color will receive preferential treatment, and do *not* state that any hiring decisions will be made on the basis of gender or race.  The suggestions to the contrary are simply make-believe.  The Form 10-K Plaintiffs cite states: "We seek to continuously improve and sustain a diverse, equitable and inclusive culture free of

2

systemic bias and where all associates feel they belong." (Exhibit A.)[2] That is a statement of equal employment opportunity. Contrary to Plaintiffs' assertions that "[w]hite men were disproportionately not hired and excluded from [a finite] interview pool," another document cited in the Complaint references "the goal to have 50% underrepresented candidates interviewed . . . to broaden candidate pools" (rather than limit them or exclude anyone from them) "and maximize the chances of hiring the most qualified candidate of every gender, race, and ethnicity." (*See* Complt., ¶¶ 6, 47, 50.) Again, this is a statement of equal opportunity and does not refer in any way to quotas or preferential treatment.

Ultimately, Plaintiffs' Complaint is fatally flawed in several crucial respects.

First, Danaher is not a proper defendant. Plaintiffs never applied for employment with Danaher. Rather, Plaintiffs applied to Pall, Beckman Coulter, Cytiva, and/or SCIEX—each of which is a distinct entity that exercised its own independent authority over hiring, management, and termination decisions. Plaintiffs do not plead any facts that, accepted as true, would sufficiently demonstrate that Danaher was the alleged "employer" for purposes of their claims. Instead, they assert only conclusory "integrated enterprise" and/or "joint employer" theories that this Court should not accept without more than buzzwords. Plaintiffs' claims against Danaher should be dismissed.

Second, this Court lacks either general or specific personal jurisdiction over the non-Danaher Defendants (Pall, Beckman Coulter, Cytiva, and SCIEX), revealing that the inclusion of improperly named Danaher is the only hook keeping this case in this Court. Pall is a New York company, headquartered in New York; Beckman Coulter is a Delaware company, headquartered

---

[2] The Court may consider this document without converting this Motion into a motion for summary judgment because it is referenced and incorporated into the Complaint. (*See* Complt., ¶ 40); *see also Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 319 n.9 (D.D.C. 2016).

in California; Cytiva is a Delaware company, headquartered in Massachusetts; and SCIEX is a Delaware company, headquartered in Massachusetts.  Accordingly, there is no basis for general jurisdiction over any of these Defendants in this Court.  And specific personal jurisdiction is also unavailable because these Defendants engaged in no relevant activities within the District of Columbia.  Thus, Plaintiffs' claims against these Defendants should be dismissed as well.

Third, Plaintiffs Michael Nadeau and Wayne Gagne do not allege that they have exhausted their Title VII claims against Danaher.  In fact, they state the opposite: that they "do not allege they have exhausted administrative remedies with respect to any claims against Danaher Corp."  (*Id*., n.2.)  Accordingly, these claims must be dismissed on their face.

Fourth, Plaintiffs' conclusory allegations are so threadbare that Plaintiffs do not state plausible race or gender discrimination claims under the pleading standards set forth by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*") and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*").  Since Plaintiffs' individual claims cannot meet these controlling standards, they should be dismissed in their entirety.

Finally, Plaintiffs' class allegations likewise should be dismissed because Plaintiffs have failed to allege facts to support even the most basic requirements of Fed. R. Civ. P. 23, once again falling short of the governing pleading standards.

For these reasons, Plaintiffs' Complaint must be dismissed in its entirety.

## FACTS PLEAD IN THE COMPLAINT[3]

### I. PLAINTIFFS' COMPLAINT

Plaintiff Michael Nadeau ("Nadeau") is a white man.  (Complt., ¶ 81.)  Nadeau applied for a "Vice President, Global Service" position.  (*Id*., ¶ 83.)  He does not identify to which

---

[3] Defendants assume the truth of Plaintiffs' well-pled factual allegations for purposes of this Motion only.

4

specific Defendant this refers, when he applied, or the other positions to which he suggests he applied. (*Id*.) He did not receive an interview and was not hired for any position. (*Id*., ¶ 85.) Nadeau claims sex and race discrimination in violation of Title VII of the Civil Rights Act ("Title VII"), race discrimination in violation of 42 U.S.C. § 1981 ("§ 1981"), and (only against Cytiva, Beckman Coulter, and SCIEX) sex and race discrimination in violation of the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B ("MFEPA"). (*Id*., Counts I-III.)

Plaintiff Wayne Gagne ("Gagne") is a white man. (*Id*., ¶ 91.) Gagne does not allege which positions he applied for, to which Defendant each position refers, or when he applied. (*Id*., ¶ 92.) He alleges that he did not receive interviews for some positions and was not selected for others. (*Id*., ¶ 94.) Gagne claims sex and race discrimination in violation of Title VII, race discrimination in violation of § 1981, and (only against Cytiva and Beckman Coulter) sex and race discrimination in violation of the New Hampshire Law Against Discrimination, RSA 354-A:7 ("NHLAD"). (*Id*., Counts I-II & IV.)

Plaintiff Patrick Farrell ("Farrell") is a white man. (*Id*., ¶ 99.) Farrell applied for a "Field Sales Specialist" position. (*Id*., ¶ 100.) He does not allege to which Defendant this position applies, when he applied, or the other positions to which he suggests he applied. (*Id*.) He did not receive an interview and was not hired for any position. (*Id*., ¶ 102.) Farrell claims sex and race discrimination in violation of Title VII, race discrimination in violation of § 1981, and (only against Pall) sex and race discrimination in violation of the Texas Commission on Human Rights Act, Texas Labor Code § 21.051 ("TCHRA"). (*Id*., Counts I-II & V.)

5

## II.    PLAINTIFFS' CHARGES[4]

On November 18, 2025, Nadeau filed an EEOC Charge against "Danaher Corporation/AB Sciex LLC dba SCIEX." (Exhibit B.) Nadeau alleged that he was not hired "because of his race, sex and age (over 40)." (*Id.*, p. 1.) The EEOC issued Nadeau notice of his right to sue on April 23, 2026. (Exhibit C.)

On November 25, 2025, Gagne filed EEOC Charges against "Danaher Corporation/CYTIVA US LLC" and "Danaher Corporation/Beckman Coulter, Inc. DBA Beckman Coulter Life Sciences." (Exhibits D & E.) Gagne alleged in both Charges that he was not hired "because of his race, sex and age (over 40)." (*Id.*, p. 1.) The EEOC issued Gagne notice of his right to sue on January 15, 2026. (Exhibits F & G.)

On December 2, 2025, Farrell filed an EEOC Charge against Danaher. (Exhibit H.) Farrell alleged that he was not hired "because of his race, sex and age (over 40)." (*Id.*, p. 1.) The EEOC issued Farrell's notice of right to sue on April 13, 2026. (Exhibit I.)

In their Complaint filed on March 16, 2026, Plaintiffs state that:

> Plaintiffs have charges of discrimination against Danaher Corp. which are still pending with the EEOC. Plaintiffs have requested right to sue letters from the EEOC, and intend to amend the complaint as the EEOC issues notices of right to sue. Plaintiffs do not allege they have exhausted administrative remedies with respect to any claims against Danaher Corp.

(Complt., n.2.)

---

[4] Although Plaintiffs did not attach copies of these documents to their Complaint, the Court may consider these documents without converting this Motion into a motion for summary judgment because they are referenced and incorporated into the Complaint. *See Bartlette*, 208 F. Supp. 3d at 319 n.9.

6

**ARGUMENT**

## I.    STANDARD OF REVIEW

### A.    Rule 12(b)(6) – Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[F]acial plausibility" means the complaint's facts must allow for a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard" thus "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Thus, at this stage the Court need not accept as true "legal conclusions couched as factual allegations." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016). Also, the Court need not "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint[,] matters subject to judicial notice," or documents "incorporated by reference into the complaint." *See Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 43-44 (D.D.C. 2019).

### B.    Rule 12(b)(2) – Personal Jurisdiction

The plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Collingsworth v. Drummond Co. Inc.*, Civil Action No. 19-1263 (ABJ), 2020 WL 2800612, at *5 (D.D.C. May 29, 2020). To survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts" and "cannot rely on conclusory allegations . . . ." *Id*. Moreover, the Court "need not treat all of the plaintiff's jurisdictional allegations as true." *Id*. Rather, it may consider "material outside of the pleadings" and "receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id*. If a plaintiff's "allegations of jurisdictional facts are

challenged by his adversary in any appropriate manner, he must support them by competent proof" and "the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence." *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *see also Prousalis v. Van Krevel*, No. 81-2257, 1982 WL 1564, at *3 (D.D.C. Jan. 15, 1982) (citing *McNutt*, 298 U.S. at 189).

## II. THE CLAIMS AGAINST DANAHER MUST BE DISMISSED BECAUSE NONE OF THE PLAINTIFFS APPLIED FOR WORK AT THAT COMPANY AND IT IS NOT AN INTEGRATED ENTERPRISE OR JOINT EMPLOYER WITH THE OTHER DEFENDANTS.

Danaher is not a proper defendant in this case. Plaintiffs speculate that Danaher and the non-Danaher Defendants constitute an "integrated enterprise and/or joint employers with respect to the challenged hiring and interview-selection practices." (Complt., ¶ 17.) Plaintiffs acknowledge that the Court must "consider the totality of the circumstances" in determining whether Danaher was the "employer." (*See id.*, ¶ 22); *see also, e.g., Doe v. Lee*, No. 19-cv-0085 (DLF), 2020 WL 759177, at *7 (D.D.C. Feb. 14, 2020) (noting "tests look to the totality of the circumstances"). But Plaintiffs do not plead facts going toward the totality of the circumstances to support their conclusion. Even under the most lenient of pleading standards, this simply is not enough.

A company may be deemed a joint employer "if it ''retain[s] for itself sufficient control of the terms and conditions'' of [ ] employment." *Doe*, 2020 WL 759177, at *7 (quoting *Redd v. Summers*, 232 F.3d 933, 938 (D.C. Cir. 2000)). In the employment discrimination context, this requires an examination of "the degree of control that the purported employer has over the employment relationship," such as the "right to hire, fire, assign, or direct and control" the employees. *Mohamed v. George Washington Univ.*, Case No. 1:22-cv-00812 (TNM), 2022 WL

3211806, at *2-3, *5 (D.D.C. Aug. 9, 2022) (granting motion to dismiss § 1981 claim); *Golden v. Mgmt. & Training Corp.*, 266 F. Supp. 3d 277, 287 n.8 (D.D.C. 2017).

Courts will dismiss a complaint alleging joint employment where the plaintiff does not "plead facts which, if proven true, would plausibly suggest" that such a relationship exists. *See Doe*, 2020 WL 759177, at *7. In *Doe*, the court granted a motion to dismiss a Title VII claim where the complaint "contain[ed] no allegations that [the alleged joint employer] controlled the terms and conditions of [the plaintiff's] employment." *Id*. at *3, *7-8, *10. Nor did the complaint "suggest that [the alleged joint employer] had any authority to hire, fire, promote, discipline or supervise" the plaintiff. *Id*. at *8. Similarly, in *Omotoye v. TD Bank, N.A.*, Case No. 22-cv-3861 (CRC), 2024 WL 1071047, at *1, *5 (D.D.C. Mar. 12, 2024) (quoting *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979)), the court granted a motion to dismiss a claim against an alleged joint employer where the complaint contained no allegations that the defendant "controlled the 'means and manner' by which [the plaintiff] completed his tasks, . . . had the ability to levy penalties or alter his conditions of employment, . . . controlled [his] compensation, paid social security or employment taxes, or awarded him retirement benefits."

Here, Plaintiffs plead no facts supporting any of these factors. They do not, for example, plead any facts showing that Danaher would have "controlled the terms and conditions of [Plaintiffs'] employment" had they been hired. *See Doe*, 2020 WL 759177, at *8. There are also no allegations that Danaher had the power to "hire, fire, [or] assign" Plaintiffs, or that it could "direct and control" their "day-to-day work responsibilities." *See Mohamed*, 2022 WL 3211806, at *3.

As for Plaintiffs' integrated enterprise theory, the law does not treat related corporations as a single entity without consideration of multiple factors, such as: (1) the interrelation of

9

operations; (2) whether there is common management; (3) whether there is centralized control of labor relations; and (4) whether there is common ownership and financial control of the various entities. *See Allen v. McEntee*, Nos. 93-7076, 93-7077, 1994 WL 709294, at *1 (D.C. Cir. 1994); *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 979-80, 982 (4th Cir. 1987) (rejecting claim that parent was employer of subsidiary's employees; "when a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer"). Plaintiffs fail to allege facts supporting these factors. The lack of interrelation of operations, common management, and common ownership and financial control is undisputed, and Plaintiffs do not plausibly show that the Court should treat Danaher and all operating companies as a single entity. *See Anderson v. Johns Hopkins Bayview Med. Ctr., Inc.*, Civil No. 16-cv-01567-JFM, 2017 WL 220136, at *9 (D. Md. Jan. 18, 2017) (granting motion to dismiss Title VII claim because plaintiff failed to plead facts sufficient to demonstrate four factors courts consider when determining whether businesses are engaged in integrated enterprise); *Purnell v. Verizon Md. Inc.*, Civil Action No. 8:10-CV-03184-AW, 2011 WL 2600683, at *1, *3 (D. Md. June 28, 2011) (granting motion to dismiss and ruling that plaintiff's allegation that defendant was responsible for creation and implementation of policies impacting plaintiff's employment was not enough to state claim when plaintiff did not provide facts bearing upon four factors courts consider in determining if integrated enterprise exists); *Taylor v. Delmarva Power & Light Co.*, Civil Action No. 1:10-CV-01796 RDB, 2011 WL 826356, at *1, *2, *4 (D. Md. Mar. 7, 2011) (granting motion to dismiss Title VII claim because plaintiff did not plead facts sufficient to establish that parent exercised "complete domination" over subsidiary, such as of fund or asset commingling, undercapitalization, or exercising daily, supervisory control; allegations that work force operated out of both defendants' locations, human resources employee represented herself as employee of

10

both defendants, and parent's exercise of "exclusive control" over subsidiary's workers were insufficient to "flout limited liability's presumption of distinct corporate identities").

Here, Plaintiffs merely allege that "Danaher exercised centralized control over labor relations" and rely on a series of other conclusory allegations to support this theory. (*See* Complt., ¶¶ 17-24.) None of them suffice to state a plausible claim against Danaher. Plaintiffs contend that Danaher "dictat[ed] mandatory recruiting and interview-slate requirements, set[] uniform policies governing mandatory screening, and require[d] compliance reporting across operating companies." (*Id.*, ¶ 17.) Plaintiffs supply no *facts* to suggest anything of the sort. In fact, the only document Plaintiffs cite regarding "slates" only refers to the "goal"—not the "requirement"—"to have 50% underrepresented candidates interviewed." (*Id.*, ¶ 47.)

> Plaintiffs allege that
>
> Danaher maintained and administered centralized recruiting infrastructure and governance—including standardized hiring workflows, centralized Talent Acquisition functions, and reporting requirements—through which Danaher influenced or controlled which candidates would be advanced to interview and selection for positions at the operating companies.

(*Id.*, ¶ 18.) Elsewhere, Plaintiffs' counsel contradict these conclusory and vague allegations. The same attorneys who represent Plaintiffs here filed two other putative class actions against many of the same Defendants alleging discrimination in promotions and hiring: *Critelli, et al. v. Danaher Corporation, et al.*, Case No. 6:25-cv-01780-AGM-LHP (M.D. Fla.) ("*Critelli*"); and *Warren, et al. v. Danaher Corporation, et al.*, Case No. 1:26-cv-00556-MJS (D.D.C.) ("*Warren*").[5] In *Warren*, the plaintiffs (at least those who chose to specify) explicitly alleged

---

[5] Plaintiffs here noted *Critelli* and *Warren* in their Notice of Related Case (*see* ECF No. 2), and the plaintiffs in *Critelli* noted this case in their Notice of Pendency of Other Actions (*see* Exhibit J). Defendants respectfully request that the Court take judicial notice of the attached *Critelli* and *Warren* pleadings, as they are a matter of public record on another court's docket. *See U.S. v. Myers*, Case No. 18-cv-39 (CRC), 2022 WL 103177, at *4 n.3 (D.D.C. Jan. 11, 2022).

that other defendants decided not to grant them interviews—not Danaher, and with no mention of involvement in these specific decisions from a "centralized Talent Acquisition function[]" or the other "infrastructure" alleged here at that stage.  (*Compare* Complt., ¶ 18 *with* Exhibit K, ¶¶ 44 (alleging that plaintiff's "employment application was rejected by Beckman Coulter, a Danaher OpCo, with no interview"), 50 (alleging that plaintiff's "employment application was rejected by Integrated DNA Technologies, Inc., a Danaher OpCo, with no interview").)  For another example, in *Critelli*, one of the plaintiffs, a former employee of an operating company, explicitly alleged that "under the direction of [the] . . . Vice President" of that operating company (not Danaher), he was informed that "he would not be considered for promotion."  (Exhibit L, ¶¶ 8, 135.)  Another *Critelli* plaintiff, a current Cytiva employee, conceded that he alleged that "Cytiva [not Danaher] denied him an interview" and "awarded the position to a female employee . . . ."  (*Id.*, ¶ 9; Exhibit M at 12.)  In addition to all of this, Plaintiffs here concede that hiring managers (at the operating companies) make the actual "hiring decisions."  (*See* Complt., ¶¶ 64-65.)[6]  Under Rule 12(b)(6), the Court should not accept as true Plaintiffs' purported allegations that are contradicted by these matters, including those subject to judicial notice.  *See Jimenez*, 395 F. Supp. 3d at 30, 43-44.[7]  As Plaintiffs' concessions reflect, the non-Danaher Defendants

---

[6] Plaintiffs' counsel also plead this in *Critelli* (albeit not as extensively as here) and, when confronted, did not dispute it.  (*See* Exhibits L, ¶¶ 78-79, N, p. 26 & O, p. 6 n.6.)

[7] Plaintiffs also contend that "Danaher designed, maintained and administered performance management systems across its OpCos, which aligned with Danaher's discriminatory hiring practices" and that "Danaher" maintained "escalation procedures, compliance monitoring, and performance accountability mechanisms" to "enforce compliance with its hiring and interview-slate requirements."  (Complt., ¶ 19-20.)  These are nothing but conclusory buzzwords, unsupported by facts.  Indeed, Plaintiffs do not cite a single "interview-slate requirement" that was "escalated" or monitored for "compliance," nor do they allege whether any particular hiring manager was ever held "accountable" for failing to meet these "hiring and interview-slate requirements."  Indeed, the allegations do not even add up; if "Danaher's . . . Talent Acquisition" allegedly was already "responsible for screening and slate creation," then there would be no need

make the final decisions regarding employment matters, as the final decision makers on the selection, retention, management, and separation of their current and potential employees, and Danaher does not control, direct or make employment decisions for the non-Danaher Defendants. Thus, the Court should treat Plaintiffs' claims for what they are: claims against the companies to which they actually applied, with their "claims" against Danaher merely serving as a gambit to rope in as many non-party "OpCos" to their putative class action as they can and maintain this action in this Court.

**III.    THE CLAIMS AGAINST PALL, BECKMAN COULTER, CYTIVA, AND SCIEX MUST BE DISMISSED BECAUSE THE COURT HAS NEITHER GENERAL NOR SPECIFIC PERSONAL JURISDICTION OVER THESE ENTITIES.**

To establish personal jurisdiction, Plaintiffs "must allege specific acts connecting [each] [D]efendant with the forum." *See Dumitrescu v. DynCorp Int'l, LLC*, 257 F. Supp. 3d 13, 17 (D.D.C. 2017).  Conclusory allegations are not enough.  *See id.*

There are two types of personal jurisdiction, general and specific.  Consistent with the Due Process Clause, a court can exercise general jurisdiction over a corporation only where the corporation is "at home," *i.e.*, its "place of incorporation and its principal place of business."  *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 412-13 (2017).[8]  Pall is a New York company headquartered in New York.  (*See* Declaration of Sasha Murphy ¶ 3.)  Beckman Coulter is a Delaware company headquartered in California.  (*See* Declaration of Edgar Quinones-Ramos ¶ 3.)  Cytiva is a Delaware company headquartered in Massachusetts.  (*See* Declaration of Latrecia Hicks ¶ 3.)  SCIEX is a Delaware company headquartered in Massachusetts.  (*See* Declaration of

---

for Danaher to "enforce compliance with . . . interview-slate requirements" at other companies. (*Id.*, ¶¶ 20, 24.)

[8] In an "exceptional case," a corporation's contacts "in another forum 'may be so substantial'" that the corporation is also "at home in that State."  *See id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014)).  Here, the Complaint identifies no such contacts between the District of Columbia and Pall, Beckman Coulter, Cytiva, or SCIEX.

Marcelo Sartori ¶ 3.)  Thus, Plaintiffs cannot establish general jurisdiction over these Defendants.

Specific jurisdiction exists if (1) the defendant "transacts any business in the District [of Columbia]; contracts to supply services in the District; causes tortious injury in the District; or has an interest in, uses, or possesses real property in the District," and (2) the plaintiff's claims "'aris[e] from acts enumerated in' the District's long-arm statute or that the exercise of jurisdiction would satisfy due process."  *Canuto v. Mattis*, 273 F. Supp. 3d 127, 140 (D.D.C. 2017) (quoting *Cap. Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 75 (D.D.C. 2003)).  Thus, Plaintiffs must plead non-conclusory facts that identify Defendants' actions within Washington, D.C. from which Plaintiffs' claims arise.  *See Lewis v. Mutond*, 62 F.4th 587, 594 (D.C. Cir. 2023) (holding that "conclusory allegation" merely stating theory of specific jurisdiction "is not enough to transform the theory into a grant of personal jurisdiction").

Here, Plaintiffs do not allege any contacts between Pall, Beckman Coulter, Cytiva, or SCIEX with the District of Columbia.  Not one of the Complaint's 167 paragraphs identifies a single specific action taken by these Defendants within Washington D.C., nor does the Complaint allege any specific impact in Washington D.C. or on any D.C. resident.  Indeed, even Plaintiffs' conclusory allegations of personal jurisdiction on their face read like a Freudian slip conceding that the Court can only exercise personal jurisdiction over one Defendant—Danaher. (*See* Complt., ¶ 27 ("This Court has personal jurisdiction over *Defendant* because *it* transacts business in, directs recruiting and hiring activities into, and caused injury within this District.") (emphasis added); *see also id*., ¶ 28 (alleging that "Danaher is subject to this Court's personal jurisdiction").)  Thus, Plaintiffs cannot establish specific jurisdiction over Pall, Beckman Coulter, Cytiva, and SCIEX.  *See Canuto*, 273 F. Supp. 3d at 130, 140 (granting motion to

14

dismiss for lack of personal jurisdiction where plaintiff had "not alleged that [defendant] has had *any* contacts with the District of Columbia . . . let alone any connection that constitutes the conduct listed in" DC long-arm statute).

## IV.    PLAINTIFFS NADEAU AND GAGNE HAVE NOT EXHAUSTED THEIR TITLE VII CLAIMS AGAINST DANAHER.

Title VII required Nadeau and Gagne to exhaust their administrative remedies before commencing suit.  *See* 42 U.S.C. § 2000e-5; *see also Charles v. Dist. of Columbia Dep't of Youth Rehab. Servs.*, 690 F. App'x 14, 14-16 (D.C. Cir. 2017) (affirming granting motion to dismiss for failure to exhaust administrative remedies as under Title VII plaintiff "could not proceed to district court without first timely exhausting available administrative remedies"; since plaintiff "did not properly exhaust her claims, she is statutorily barred from filing suit in federal court").  They must file EEOC Charges and receive notice from the EEOC of their right to sue before filing their Title VII claims.  *See Greggs v. Autism Speaks, Inc.*, 935 F. Supp. 2d 9, 12-14 (D.D.C. 2013) (granting motion to dismiss since plaintiff failed to exhaust her administrative remedies with respect to Title VII claims when she initiated action before she received right-to-sue letter from EEOC).

The Complaint alleges that:

> Plaintiffs have charges of discrimination against Danaher Corp. which are still pending with the EEOC.  Plaintiffs have requested right to sue letters from the EEOC, and intend to amend the complaint as the EEOC issues notices of right to sue.  Plaintiffs do not allege they have exhausted administrative remedies with respect to any claims against Danaher Corp.

(Complt., n.2.)  In other words, Nadeau and Gagne knew their Title VII claims against Danaher were not yet ripe for suit because they had not received notice of their right to sue from the EEOC with respect to those claims, but they filed these claims anyway.  Since they have failed to exhaust their Title VII administrative remedies, their Title VII claims against Danaher must be

15

dismissed. *See Fitzpatrick v. Amazon of Sparrowspoint*, Civil Action No. 23-00939-BAH, 2024 WL 358205, at *2 (D.D.C. Jan. 31, 2024) (granting motion to dismiss Title VII claims because "plaintiff's admitted failure to exhaust his administrative remedies compels dismissal of the complaint"); *McGee v. Dist. of Columbia*, No. CIV 06CV705 RJL, 2006 WL 2598264, at *1-2 (D.D.C. Sept. 11, 2006) (granting motion to dismiss Title VII claims "because [plaintiff] has not exhausted his administrative remedies, namely, that he has participated in the EEOC process up to the point of the issuance of an appropriate right to sue letter by the EEOC").

## V.    PLAINTIFFS FAIL TO SUFFICIENTLY PLEAD PLAUSIBLE INDIVIDUAL CLAIMS.

The Complaint fails to state facts plausibly suggesting discrimination. Plaintiffs' Complaint purports to raise claims in connection with an unspecified number of jobs that Plaintiffs did not receive. But Plaintiffs do so only in a cursory, conclusory manner—without pleading facts to support even a minimal inference of discriminatory intent. *See Easaw v. Newport*, 253 F. Supp. 3d 22, 29, 32 n.4 (D.D.C. 2017) (granting motion to dismiss and noting that "[s]tating simply 'I was turned down for a job because of my [protected class]' is precisely the kind of conclusory allegation that is patently incompatible with *Twombly* and *Iqbal's* pleading requirements"). Instead, Plaintiffs merely speculate that they did not receive positions because of their sex and race (and age, as alleged in their Charges). If speculation were enough to support civil rights litigation–especially those brought as class actions–courts would be inundated with baseless and burdensome matters like this one.

To allege disparate treatment under Title VII, a plaintiff must

plead[] facts from which it can reasonably be inferred that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class).

16

*See Dismukes v. U.S. Dep't of Veterans Affs.*, Civil Action No. 23-cv-02259 (ACR), 2025 WL 343190, at *1, *6 (D.D.C. Jan. 30, 2025) (granting motion to dismiss Title VII failure to hire claim).[9]  A plaintiff can meet this pleading burden either "by providing 'direct evidence of . . . animus' or by comparison to a similarly situated employee."  *See Dixon v. Blinken*, Civil Action No. 22-2357 (RDM), 2024 WL 4144105, at *3-4 (D.D.C. Sept. 11, 2024) (quoting *Yuvienco v. Vilsack*, Civil Action No.: 23-186 (RC), 2024 WL 727712, at *3 (D.D.C. Feb. 22, 2024)).  Here, Plaintiffs appear to choose the latter route, basing their claims on their allegations that "Defendants advanced other candidates to interviews and filled at least some of the roles for which Plaintiff[s] [] applied after screening [Plaintiffs] out and/or denying [Plaintiffs] selection." (*See, e.g.*, Complt., ¶ 96.)

For most of their applications, Plaintiffs do not even identify the specific positions they supposedly sought.  Instead, they simply refer to "positions" generically.  (*Id.*, ¶¶ 83, 92, 100.) That is not enough.  *See Mills v. Hayden*, Civil Action No. 04-2205 (RBW), 2024 WL 4697733, at *1, *15 (D.D.C. Nov. 6, 2024) (granting motion to dismiss Title VII claims because "the Complaint provides the Court no factual information relating to the disparate treatment of allegedly similarly situated Caucasian employees relating to . . . <u>specific</u> positions the plaintiffs to which applied for and were denied"); *Amis v. Mayorkas*, No. 21-1544, 2022 WL 1090252, at *1 (4th Cir. Apr. 12, 2022) (affirming order dismissing Title VII claims because plaintiff "did not allege any facts about the position").  For all of their applications, Plaintiffs do not allege

---

[9] Claims under the MFEPA, NHLAD, and TCHRA are analyzed under the same framework as Title VII, which, in turn, are analyzed under the same framework as § 1981 claims.  *See Bastian Nat'l Multiple Sclerosis Soc'y*, No. 24-cv-02757 (DLF), 2026 WL 866176, at *7 (D.D.C. Mar. 30, 2026); *Farzinpour v. Berklee Coll. of Music*, 616 F. Supp. 3d 98, 113 (D. Mass. 2022); *Carr v. Humble Indep. Sch. Dist.*, Case No. 4:17-CV-0773, 2018 WL 1064583, at *5 (S.D. Tex. Feb. 23, 2018); *Salisbury v. Home Depot, U.S.A., Inc.*, Civil No. 14-cv-260-JD, 2014 WL 6750648, at *2 n.4 (D.N.H. Dec. 1, 2014).

which particular Defendant each position was with or when they sought the positions.   (Complt., ¶¶ 83, 92, 100.)   Plaintiffs' claims must be dismissed for these reasons alone.   *See Amissah v. Gallaudet Univ.*, Civil Action No. 19-679 (RC), 2019 WL 13277397, at *4-5, *7 (D.D.C. Dec. 23, 2019) (quoting *Amissah v. Gallaudet Univ.*, Civil Action No.: 19-679 (RC), 2019 WL 2550334, at *3 (D.D.C. June 20, 2019)) (granting motion to dismiss Title VII claims with respect to "unnamed management positions" because plaintiff did "not identify 'the who, what, where, and when'"); *Barcliff v. N.C. League of Muns.*, No. 5:10-CV-244-D, 2011 WL 285559, at *3 (E.D.N.C. Jan. 25, 2011) (granting motion to dismiss Title VII and § 1981 claims because "[i]f the events occurred, [plaintiff] should be able to identify the specific promotion for which she applied" and "when she was not selected").

More broadly, allegations by each Plaintiff suffer from the same fatal flaw: they are utterly devoid of factual content that might support a discriminatory inference.   For instance, Plaintiffs have no facts but simply offer in "conclusory" fashion that they were "qualified" for the (mostly unidentified) positions.   *Amis*, 2022 WL 1090252, at *1 (noting plaintiff "did not allege any facts about the position other than the desired experience that the employer sought[, a]nd his complaint discusses only one of three requirements for an applicant to qualify for the position").   Without more, Plaintiffs' naked allegations that they "met all of the requirements of the [mostly unidentified] positions" do not plead a claim.   (*See, e.g.*, Complt., ¶ 84); *see also, e.g.*, *Dismukes,* 2025 WL 343190, at *6 (noting complaint was "silent on . . . the job requirements for those positions"); *Dixon*, 2024 WL 4144105, at *5 (ruling that plaintiff's complaint failed because it did not dispel any obvious alternative explanation for his non-selection when "his conclusory self-assessment is not supported by any *factual* allegations supporting that belief: he does not indicate what his qualifications were or what qualifications

18

were required for the position"; "[h]e alleges only that 'his performance evaluations will show that his performance was far above the standards set'"); *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 169, 171 (4th Cir. 2020) (affirming dismissal regarding § 1981 failure to promote claim and holding that allegation that plaintiff "was qualified for the position" was "insufficient to support a plausible race-discrimination claim"); *Barcliff v. N.C. League of Muns.*, No. 5:10-CV-244-D, 2011 WL 3290578, at *1, *5 (E.D.N.C. Aug. 1, 2011) (granting motion to dismiss Title VII claim and ruling that complaint did not "plausibly allege why [plaintiff] was qualified for the promotions").

Although Plaintiffs claim "functional quotas for hiring women and [people of color]" and efforts "to ensure [the] internal quotas are satisfied" and allege that "Defendants advanced other candidates to interviews and filled at least some of the roles for which Plaintiff[s] [ ] applied after screening [Plaintiffs] out and/or denying [Plaintiffs] selection," conspicuously absent is any allegation about these "other candidates" (suggesting these facts may not fit Plaintiffs' narrative). (Complt., ¶¶ 5, 87, 96, 104.)  This is another fatal flaw.  *See Lanier v. Smedberg*, Civil Action No. 23-02922 (AHA), 2025 WL 2144075, at *4-5, *8 (D.D.C. July 29, 2025) (granting motion to dismiss Title VII claim because while plaintiff "describes his own qualifications and three positions [defendant] gave to female employees, he does not provide any details about the qualifications of those who were offered the positions, let alone specific allegations showing they were less qualified than him"); *Webster v. Burgum*, Civil Action No. 23-3050 (RC), 2025 WL 1279355, at *1, *4 (D.D.C. May 2, 2025) (granting motion to dismiss Title VII claim because "Plaintiff also fails to provide any factual details about the final selectee"); *Montgomery v. Mayorkas*, Civil Action No. 23-3931 (BAH), Civil Action No. 24-1697 (BAH), 2024 WL 4973406, at *1, *8 (D.D.C. Dec. 4, 2024) (granting motion to dismiss Title VII claim because

19

"plaintiff fails to allege certain critical facts that would give rise to an inference of discrimination, including . . . who the selectees were . . ., and in what ways they were not part of his protected class, especially here where plaintiff has alleged that he is a member of multiple protected classes"); *Brown v. McDonough*, Civil Action No.: 22-3209 (RC), 2024 WL 1344417, at *8, *13 (D.D.C. Mar. 29, 2024) ("While [the plaintiff] alleges that the individual hired for the Labor Specialist position was a person outside of his class, he does not make the same allegation with respect to the HR Specialist position. [ ] Because [the plaintiff] has not alleged any facts that could support causation with respect to the [ ] decision not to interview or hire him for the HR Specialist position, [the plaintiff] has not stated a claim to relief under Title VII with respect to his non-selection for that position. Accordingly, the Court grants the [ ] motion [to dismiss] in this respect."); *Bishop v. U.S. Dep't of Agric.*, Case No. 1:22-cv-0635 (TNM), 2022 WL 17415049, at *1, *3 (D.D.C. Dec. 5, 2022) (dismissing Title VII claim for failure to state a claim because "[a]ll that is known is that [plaintiff] was not selected for any of the three positions for which he applied and that the [defendant] selected other candidates for the positions" and plaintiff did not allege race of at least some of relevant persons selected); *Stanton v. Potomac Elec. Power Co.*, Case No. 20-cv-02464 (CRC), 2021 WL 4192149, at *5 (D.D.C. Sept. 15, 2021) (ruling that amendment would be futile when plaintiff "merely alleges that he 'was qualified for the position, however, the two open positions were given to other employees'" because plaintiff did not allege race of parties he compared himself to); *Amissah*, 2019 WL 13277397, at *5 (noting that plaintiff did "not identify who was selected for [one] position" or "that he was more qualified than the selected candidates" for another); *Manyara v. Bowie State Univ.*, No. PWG-12-1838, 2013 WL 781790, at *1, *4, *6 (D. Md. Feb. 28, 2013) (granting motion to dismiss Title VII claim because Kenyan-born plaintiff did not plead facts such as "that

20

other, American-born, professors received tenure or promotion while he did not"); *Barcliff*, 2011 WL 285559, at *3 (ruling that "[i]f the events occurred, [plaintiff] should be able to identify . . . the person or persons selected").

Likewise, just as Plaintiffs have not provided "any information regarding the characteristics of the selected applicant (or any other comparator)," Plaintiffs have not alleged sufficient information "as to whether [Plaintiffs] and that applicant (or any other comparator) were similarly situated."  *See Dismukes*, 2025 WL 343190, at *6; *see also Dee v. Granholm*, Civil Action No. 23-1950 (LLA), 2024 WL 4263831, at *6-7, *10 (D.D.C. Sept. 23, 2024) (granting motion to dismiss Title VII claims "because [plaintiff] does not allege any non-conclusory facts to suggest that he and [selectee] were similarly qualified for the position"); *Bishop*, 2022 WL 17415049, at *1, *3 ("The Court is left, then, with [the plaintiff's] conclusory statement that, because the [defendant] did not hire him, the [defendant] must have discriminated against him on the bases of his race and sex.  Given the dearth of factual allegations, it is not reasonable to conclude that [the African-American male plaintiff] was treated differently from a similarly situated selectee who was neither Black nor male.").

Plaintiffs' conclusory allegations about the alleged "DEI Policy" invite the Court to speculate regarding the motivation for the few employment decisions Plaintiffs (barely) describe in the Complaint.  However, the Complaint must do more than leave the Court to "speculate" or "fill the gaps" as to the motivations for the alleged discriminatory conduct.  *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 583-84, 586 (4th Cir. 2015) (affirming district court granting motion to dismiss Title VII claims when plaintiff "claimed in conclusory fashion that the decisionmakers were biased when making the decision" including "based upon the history of hires" and "complaint did not include any allegations regarding the

21

qualifications or suitability of the persons hired to fill the two positions"). Plaintiffs theorize that (in some instances) they were "screened out at Defendants' centralized gatekeeping step and denied the opportunity to interview" as white men to satisfy the alleged requirement "that 50% of interviewed candidates be diverse or female candidates." (*See* Complt., ¶¶ 61, 86, 88, 96, 103-04.)[10] According to Plaintiffs, they had to be screened out "to preserve or achieve the required slate composition" because there was only a "finite number of interview slots available for a given requisition." (*See id.*, ¶¶ 88, 96.) However, the document relied upon by Plaintiffs as evidence of the alleged "50% requirement" does not support their theory. (*See id.*, ¶ 47.) As noted above, that document references a "goal," not a requirement, "to have 50% underrepresented candidates interviewed." (*See id.*) Plaintiffs also fail to present any facts suggesting that there was only a limited number of "interview slots available for a given requisition." (*See id.*, ¶ 88.) Again, the document they cite shows the opposite, stating the goal as "to broaden candidate pools" (not limit them or exclude anyone from them) to "maximize the chances of hiring the most qualified candidate of every gender, race, and ethnicity." (*See id.*, ¶ 47.) Plaintiffs offer no factual allegations to support their speculative assertions as to how this "[i]n practice" worked differently than as stated in this document, much less how it worked "[i]n practice" against them in particular. (*See id.*, ¶ 6.) Plaintiffs do not even allege the compositions of the particular interview "slates" from which they were allegedly excluded. Their reliance on the alleged "DEI Policy" to support their speculative individual claims fails. *See Dismukes*, 2025

---

[10] Notably, Gagne (one out of three Plaintiffs) received interviews some of the time. (*Id.*, ¶ 94.) His allegation that he "was denied interviews for certain positions and denied selection for others pursuant to the same centralized slate constraints described herein" makes little to no sense, since he pleads that he got past the "centralized slate constraints described herein" multiple times. (*Id.*) Gagne offers no further speculation as to how the alleged "DEI Policy" denied him jobs for which he received interviews.

22

WL 343190, at *7 (ruling that "conclusory allegations and unadorned speculation about the [defendant's] hiring practices will not give rise to a conceivable, let alone plausible, inference that [plaintiff's] non-selection was based on his race . . . or sex"); *Bishop*, 2022 WL 17415049, at *2 (quoting *Beaulieu v. Barr*, No. 15-cv-00896, 2019 WL 5579968, at *4 (D.D.C. Oct. 29, 2019)) ("So conclusory allegations and unadorned speculation about the [defendant's] hiring practices will not 'allow the Court to infer that [it was] motivated by discrimination based on' [the plaintiff's] race or gender."); *Gladden v. Solis*, 926 F. Supp. 2d 147, 148-49, 151 (D.D.C. 2013) (quoting *Iqbal*, 556 U.S. at 679) (granting motion to dismiss Title VII claim because court was "unpersuaded that it is a 'reasonable inference' . . . that the decision not to include [African-American] plaintiff on the list of eligible candidates was because of plaintiff's race," including when "two of the five on the list of eligible candidates were African-American, . . . and the person ultimately selected for the position was an African-American male;" "[r]ather, this is a classic example of a case where 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct'"); *Bradley v. Gannett Co. Inc.*, Civil Action No. 1:23-cv-1100 (RDA/WEF), 2024 WL 3905817, at *1, *6-7, *10 (E.D. Va. Aug. 20, 2024) (granting motion to dismiss § 1981 claims and ruling that "Policy" that was "designed to achieve 'racial and gender parity with the diversity of [the] nation, throughout [defendant's] workforce'" did not "establish disparate treatment" and plaintiff failed "to make any connection between the Policy or 2020 Inclusion Report (which does not specifically encourage racism of any kind) and the decision-makers with respect to the . . . position for which he applied").

23

Indeed, notwithstanding their speculation, Plaintiffs allege no facts that any of the decisionmakers knew their race when they made the employment decisions at issue.[11]  Naturally, a defendant cannot intentionally discriminate against a plaintiff due to race unless the defendant knows the plaintiff's race.  Once again, Plaintiffs can only speculate.  Specifically, Plaintiffs allege that because

> Defendants' centralized screening process was designed specifically to monitor and control candidate slates by race and sex, which necessarily required that Defendants identify candidates' demographic status at or before the interview-selection stage[,] Defendants therefore acted with knowledge of Plaintiffs' protected characteristics when Plaintiffs were screened out [or] denied interviews.

(Complt., ¶ 76.)  In other words, Plaintiffs allege that Defendants knew their race because Defendants must have known their race according to Plaintiffs' theory.  Plaintiffs' assertion is not only circular and conclusory, it tellingly ignores their pleading failure: Plaintiffs do not allege what information they specifically provided about their race, or how exactly Defendants knew each Plaintiff's race otherwise.  *See Nedremizara v. Towers Watson*, Civil No. 12-1358 (RCL), 2013 WL 4498977, at *1 (D.D.C. Aug. 21, 2013) (granting motion to dismiss because plaintiff's amended complaint failed to allege facts sufficient to establish his claim that defendant "discriminated against him on the basis of race . . . by failing to hire him," including "no facts to suggest that [defendant] knew his . . . race when rejecting his application").[12]

---

[11] To clarify, Defendants do not raise this argument with respect to the (unspecified) positions for which Gagne claims he received interviews.

[12] To be clear, even if Plaintiffs had alleged that any decisionmakers knew Plaintiffs' own race when they made the employment decisions at issue, it would not be enough to state a claim.  *See, e.g., Webster*, 2025 WL 1279355, at *4 ("However, even Plaintiff's allegation that he included his race on his resume still fails to state a claim because, other than implying the possibility that the Agency was *aware of* his race before making the hiring decision, the pleadings provide no further factual basis for the inference that Plaintiff was not selected *because of* his race.").  The point is Plaintiffs do not even allege at a minimum that Defendants knew their race in particular.

In sum, Plaintiffs ask the Court to assume, as they do, that they were not hired based on some unspecified combination of their race and sex. Plaintiffs fail to allege facts that would plausibly support an inference that any decision not to hire them was due to their race or sex. As such, Plaintiffs fail to sufficiently plead their individual race and sex discrimination claims.[13]

## VI.    PLAINTIFFS FAIL TO SUFFICIENTLY PLEAD BASIC RULE 23 CLASS REQUIREMENTS.

Under Rule 23, district courts enjoy "broad discretion in determining whether to permit a case to proceed as a class action." *Abdul-Baaqiy v. Fed. Nat'l Mortg. Ass'n*, 149 F. Supp. 3d 1, 10-11 (D.D.C. 2015) (striking plaintiff's class action claims from amended complaint in granting motion to dismiss). Pursuant to that discretion, a court "may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Indeed, this Court's local rules acknowledge that such orders are appropriate even at the pleading stage, specifically providing that defendants "may move *at any time* to strike the class action allegations or to dismiss the complaint." LCvR 23.1(b) (emphasis added). And "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Ellison v. Inova Health Care Servs.*, 692 F. Supp. 3d 548, 565 n.15 (E.D. Va. 2023) ("Although the Court does not have the benefit of the discovery, there are times that the issues are clear enough at the pleading-stage to determine that a case is not appropriate for

---

[13] Plaintiffs' failure to assert individual claims cascades to Plaintiffs' representative claims. If Plaintiffs have not properly pled their individual claims, they certainly cannot represent others with respect to those claims. *See, e.g., Brink v. XE Holding, LLC*, No. 1:23-cv-00325-MSN-LRV, 2024 WL 3952567, at *8 (E.D. Va. Aug. 26, 2024) ("Because the Court will dismiss Plaintiffs individual claims and Plaintiffs have not yet moved for class certification, the Court will also dismiss Plaintiffs' class claims."). Indeed, Plaintiffs' representative claims only serve to amplify the deficiencies that plague their individual claims.

class relief."); *Cornette v. Jenny Garton Ins. Agency, Inc.*, Civil Action No. 2:10-CV-60, 2010 WL 2196533, at *2 (N.D.W. Va. May 27, 2010) ("Where the inability to maintain the suit as a class action is apparent from the face of the complaint, a court may dismiss the class allegations on the pleadings."). This is one of those times.

First, members of a proposed class must be "readily identifiable." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). "[I]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id*.; *see also Bradley*, 2024 WL 3905817, at *11 (granting motion to dismiss because "[g]iven lack of ascertainability of the Proposed Class . . . the Court concludes that it is appropriate to strike the class allegations from the Amended Complaint"). Plaintiffs' proposed classes are not reasonably defined, and Plaintiffs provide no detail of how they would ascertain or identify members of their proposed classes. Plaintiffs' proposed classes begin with the need to identify "[a]ll white men" and "[a]ll applicants who Danaher did not define as a 'person of color'" who "were not interviewed or hired." (Complt., ¶¶ 109-16.) But which applicants fit within which racial category alleged is not ascertainable via any objective means. Defendants' limited access to such information is through voluntary self-identification, and not all applicants choose to self-identify.

It is also apparent from the face of Plaintiffs' Complaint that they do not plead Rule 23(a)'s requirements that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Take Rule 23(a)(1) as an example.  This Court's rules instruct that class action complaints must allege "the size (or approximate size) . . . of the alleged class."  LCvR 23.1(a)(2)(i).  Plaintiffs allege that:

> The members of the putative classes are so numerous that joinder is practically impossible.  Danaher's DEI Policy was enforced with respect to hundreds, if not thousands, of job postings, for which thousands of putative Class Members submitted applications.  Based on the number of putative Class Members and their geographic disbursal, joinder is impracticable.

(Complt., ¶ 118.)  However, Plaintiffs propose eight separate classes, subject to different time periods, and most of which consist of individuals who applied to only one Defendant.  (*See id.*, ¶¶ 109-16.)  Plaintiffs' single across-the-board conclusory allegation as to numerosity does not suffice.  Plaintiffs here have failed to allege facts that would show the size of each of these eight putative classes, as the local rules require.  *See Cornette*, 2010 WL 2196533, at *2-3 (granting motion to strike class allegations because plaintiff's allegations "with regard to numerosity" were "plainly inadequate"); *Clark v. Va. Paper Co., Inc.*, No. 77-1832, 1978 WL 13931, at *3, *5 (D.S.C. May 3, 1978) (granting motion to strike class action allegations because plaintiff failed to plead numerosity).

Under Rule 23(a)(2), Plaintiffs must show that their claims depend upon a "common contention" that "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).  In *Wal-Mart Stores, Inc.*, the Supreme Court rejected certification of a class challenging discretionary promotional decisions on a nationwide basis.  *Id.* at 344-45, 367.  Given that employment discrimination claims turn on the reason for a particular employment decision, it held that it is impossible to resolve class claims "[w]ithout some glue" connecting each decision.  *See id.* at 352.  Here, Plaintiffs admit that the "hiring decisions" were made by numerous individual hiring managers who "exercised discretion" in making an "individualized assessment . . . ."  (*See* Complt., ¶¶ 60,

27

64-65.)  Thus, according to Plaintiffs, Plaintiffs' claims implicate an unknown number of employment decisions from coast to coast[14] made by potentially hundreds of decisionmakers over several years concerning every single job title (from janitor to CEO) for nearly 20 different companies, most of which are not even parties to this case.  (*See id.*, ¶¶ 2, 109-16, 118.)  This directly invokes *Wal-Mart Stores, Inc.  See* 564 U.S. at 355-56.

Plaintiffs cannot realistically stretch the alleged "DEI Policy" as a common denominator capable of resolving what they admit are potentially thousands of discrete, individual employment decisions.  Even if Plaintiffs' speculation were true that hiring managers were "encouraged" and "pressure[d]" toward discriminatory practices (they were not), that would not implicate every hiring decision made at each of nearly 20 companies across the country since 2022.  (Complt., ¶¶ 2, 65-66, 109-16.)[15]  To determine if intentional discrimination occurred, each decision still must be analyzed individually.  *See Talley v. ARINC, Inc.*, 222 F.R.D. 260, 267, 271 (D. Md. 2004) (granting motion to strike class allegations because "promotion decisions are made by individual managers").

Additionally, Plaintiffs cannot plead commonality by alleging that "white men were disproportionately . . . excluded from the interview pool" so that 50% of those who the hiring manager interviewed would be from "'underrepresented' populations."  (Complt., ¶¶ 47, 50, 63, 96.)  This "50%" framework would not generate common claims by definition—while Plaintiffs

---

[14] Indeed, as pled, the Complaint theoretically involves employment decisions outside of the United States and around the globe.  (*See, e.g., id.*, ¶ 109.)

[15] Notably, there would be no need for Plaintiffs to make these allegations if hiring managers did not have ultimate hiring authority in the first place.  Regardless, Plaintiffs do not allege whether any particular hiring manager ever actually was "rewarded" for meeting the alleged quotas, "received lower performance evaluations, less career advancement opportunities [or] lower discretionary compensation" for any decision made that did not meet the quotas, were otherwise "penalized for hiring men and non-diverse candidates," or made employment decisions with quotas in mind.  (*Id.*, ¶¶ 20, 69.)

28

make a point to characterize the denial of an interview as a distinct claim, by Plaintiffs' own admission, many putative class members were admittedly interviewed.  (*See, e.g., id.,* ¶ 80.)[16] Also, alleging "harms involv[ing] different practices at different stages" of the process only defeats a commonality showing.  *See G.T. v. Bd. of Educ. of Cnty. of Kanawaha*, 117 F.4th 193, 205-06 (4th Cir. 2024) (holding that class failed to satisfy commonality "because Plaintiffs do not identify a common contention central to the validity of all class members' claims").  Plaintiffs' proposed classes are comprised of white male applicants who "were not interviewed or hired."  (*See, e.g.*, Complt., ¶ 109.)  Even if Plaintiffs' speculation and unsupported assertions about "screening . . . out" applicants by race and sex were true (they are not), that would not provide an across-the-board way to determine why all members of Plaintiffs' proposed classes were not hired.  (*Id.*, ¶ 76.)  In particular, it would not account for a putative class member that progressed past the "screening" stage but still was not hired.

Finally, Defendants have legitimate, non-discriminatory reasons for each challenged decision, which, again, could only be analyzed on an individual-by-individual basis.  *See Brooks v. Circuit City Stores, Inc.*, Civ. A. No. DKC 95-3296, 1996 WL 406684, at *5-6 (D. Md. June 17, 1996) (denying motion for leave to file second amended complaint and noting that "[a] disparate treatment claim is one that necessarily requires individual examination" such as determining "whether the legitimate nondiscriminatory reason presented by [defendant] for each employment action was a pretext for discrimination," which "will require an inquiry into the requirements of the particular position at issue, a comparison of the qualifications of the potential

---

[16] Indeed, while some Plaintiffs allege that they were denied interviews, Gagne admits that he received interviews, at least some of the time.  (*See id.*, ¶ 94.)

applicant versus the successful applicant, and a determination of the motivation of the supervisor in each case").

"As in the *Dukes* case, the Plaintiffs would all be seeking relief based on different theories of recovery, based on different positions at different [companies] in different areas of the county with different decision-makers." *See Bradley*, 2024 WL 3905817, at *11. An individualized analysis of each of the employment decisions challenged by Plaintiffs is required to determine if race or gender discrimination was the intentional, but-for reason for those decisions, and the same would be true for each and every employment decision about which a putative class may complain. When such individualized determinations are necessary, there is no commonality and no basis for a class action. *See id.* (ruling that plaintiffs failed "to facially establish . . . the commonality of issues presented by the Proposed Class" because "although Plaintiffs have alleged a company-wide policy, the Policy provides no specific instructions or mandate as to how it is to be enforced or accomplished," such that "with respect to any individual employment decision, decision-makers are going to be exercising a high level of discretion" and "[a]ny resolution of these issues will necessarily require mini-trials . . . that examines the specifics of the relevant position, the qualifications required, and the individual decision-maker"); *Talley,* 222 F.R.D. at 268 ("Plaintiffs have failed to demonstrate the existence of any discriminatory pattern or practice that would bind the proposed classes together on the question of liability. What remains is an aggregation of individual discrimination claims that require-and-deserve-individual adjudication. As a consequence, there is no basis for a finding of commonality as to the proposed classes."); *cf. Garcia v. Johanns*, 444 F.3d 625, 633 (D.C. Cir. 2006) (holding that despite plaintiffs' "allegation that the [defendant's] actions are those of a 'single actor,' their claims arise from multiple individual decisions made by multiple individual

committees"); *Artis v. Yellen*, 307 F.R.D. 13, 25 (D.D.C. 2014) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 355) (ruling that although plaintiffs "vaguely allege the existence of discriminatory policies and practices . . ., the only general policy established by the record is the . . . anti-discrimination policy," and "[t]he only other practice established by the record is that low-level managers set the standards and methods applicable to promotions," which "shows nothing but a general policy 'of allowing discretion by local supervisors over employment matters'").

This same shortfall also infects Plaintiffs' representation that they are typical representatives of the proposed classes. *See Artis*, 307 F.R.D. at 27 ("Plaintiffs' claims lack typicality for the same reason they lack commonality."); *Valerino v. Holder*, 283 F.R.D. 302, 318 (E.D. Va. 2012) (ruling "that individualized inquiry" as to whether each "individual applicant was denied an employment opportunity for lawful reasons" would "vary for each plaintiff foreclosing any claim that the named Plaintiffs claims are typical"); *Skipper v. Giant Food Inc.*, 68 F. App'x 393, 397 (4th Cir. 2003) (holding that claims would "involve individualized inquiries into whether each person was qualified for the particular position for which that person applied" such that "district court did not err in holding plaintiffs failed to satisfy the commonality and typicality requirements of Rule 23(a)"). Plaintiffs fail to plead typicality because they do not "present the factual scenario of a discriminatory practice being applied so as to broadly discriminate against persons in the identical manner." *See Talley*, 222 F.R.D. at 268.

Further, while Plaintiffs Nadeau and Farrell's claims are based solely on their allegations that they were denied interviews—which, again, Plaintiffs make a point to characterize as a distinct injury—their respective proposed "MFEPA [ ] Class[es]" and "TCHRA [ ] Class" are not limited to individuals with failure to interview claims but rather encompass white male

31

applicants who "were not interviewed or hired." (Complt., ¶¶ 80-90, 99-106, 111-13, 116.)  This matters.  For example, Plaintiffs' proposed definitions would sweep in candidates who, unlike Plaintiffs, received interviews but then may claim they were aggrieved in different ways, such as by hiring managers rejecting them after feeling "encouraged" or "pressure[d]" to meet an alleged quota, requiring a specific evaluation of the manager's decision.  (*See, e.g., id.*, ¶¶ 65-66.)  For this reason, too, Nadeau and Farrell cannot be "typical" representatives of their proposed MFEPA and TCHRA classes.  *See Artis*, 307 F.R.D. at 27 ("Moreover, plaintiffs challenge an array of personnel decisions related to five different employment benefits, yet each plaintiff experienced different treatment and many did not claim to have been discriminated against in connection with one or more of those benefits. . . .  Accordingly, the putative class lacks typicality."); *Valerino*, 283 F.R.D. 317 ("Some class members may want to challenge the role or substance of the interview.  Or they may want to challenge the fact that they failed to make the Best Qualified List and here none of the named Plaintiffs have challenged a promotion denial where they failed to make the Best Qualified List.").

The adequacy of representation analysis under Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Valerino*, 283 F.R.D. at 318.  Plaintiffs seek to represent eight distinct putative classes.  Seven of those classes consist of white men, alleging sex and race discrimination.  (Complt., ¶¶ 109, 111-16 & Counts 1, III-V.)  However, one class (the "proposed '42 U.S.C. 1981 Class'") consists of "[a]ll applicants who Danaher did not define as a 'person of color,'" alleging just race discrimination in violation of § 1981.  (*See id.*, ¶ 110 & Count II.)  By so pleading, Plaintiffs have guaranteed conflicts that cannot be reconciled because Plaintiffs' claims of discrimination on behalf of certain individuals will inevitably require them to argue that Defendants improperly favored other individuals they

32

simultaneously seek to represent.  For instance, Plaintiffs allege that men were not hired for positions based on their gender.  (*See id.*, ¶ 42.) Women necessarily would be the beneficiaries of this alleged discrimination, including females in the 42 U.S.C. 1981 Class.  *See Talley*, 222 F.R.D. at 269-70 ("There are also clear conflicts inherent within the classes as Plaintiffs have defined them.  Counsel for the Plaintiffs has defined classes of African American employees . . . as well as female employees . . . .  One immediate conflict is thus apparent from the fact that an African American male, who is a named Plaintiff, complains that he was denied a promotion in favor of a qualified female.  This conflict is exacerbated by the fact that many of the named Plaintiffs and proposed class members are members of both proposed classes."); *Hammons v. Folger Coffee Co.*, 87 F.R.D. 600, 601 (W.D. Mo. 1980) ("An attempt to represent all blacks and all females would place plaintiff in a position of inherent conflict.  She would have to argue that defendant's policies discriminated against blacks and in favor of all whites, including white females.  On the other hand, she would have to argue that defendant's policies discriminated against females and in favor of males, including black males.  This Court can conceive of no situation where a single litigant could adequately represent both groups.").  There can be no adequacy of representation under Rule 23(a)(4) where such conflicts exist by virtue of the overlapping classes sought to be represented.  *See Richardson v. Coopers & Lybrand*, 82 F.R.D. 335, 338 (D.D.C. 1978) (ruling that "where there are allegations of both race and sex discrimination, simultaneously representing women and black males who may potentially entertain antagonistic interests" would not be adequate).[17]

---

[17] In addition, "[i]n light of the inadequacy of [Plaintiffs'] allegations with regard to the first three requirements of Rule 23(a), this Court cannot find that [Plaintiffs] would adequately protect the interests of a putative class."  *See Cornette*, 2010 WL 2196533, at *3.

Rule 23(b)(2) is unavailable to plaintiffs who seek individualized monetary relief. *See Wal-Mart Stores, Inc.*, 564 U.S. at 360-61 (holding that Rule 23(b)(2) certification is not permitted where "each class member would be entitled to an individualized award of monetary damages"). Here, Plaintiffs cannot sufficiently plead a Rule 23(b)(2) class because they ask that each class member be awarded individualized relief for at least exemplary, punitive, and other damages. (*See* Complt., ¶¶ 140, 149, 155, 161, 167; *see also id.*, ¶¶ 132 ("Danaher's actions have caused and continue to cause Plaintiffs and all Class Members substantial losses in earnings and other employment benefits."), 133 ("Class Members suffer and continue to suffer emotional distress, humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.")); *Artis*, 307 F.R.D. at 27 ("Because plaintiffs' proposed class brings claims for backpay, it may not be certified under Rules 23(b)(1) or (b)(2)."); *Cheng v. Liu*, No. 23-1806, 2024 WL 3579606, at *3-4 (4th Cir. July 29, 2024) (holding that certification under Rule 23(b)(2) was improper because "an individualized determination of damages will be necessary").

Rule 23(b)(3) requires that common issues "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The "predominance" requirement of Rule 23(b)(3) is "far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). As described above, Plaintiffs' Complaint allegations show that they cannot satisfy even the lower standard of commonality under Rule 23(a), much less the more rigorous predominance requirement of Rule 23(b)(3). *See Artis*, 307 F.R.D. at 28 ("In the absence of any common issue, it cannot be said that common issues predominate. Accordingly, a (b)(3) class is also inappropriate."); *Brooks*, 1996 WL 406684, at *6 ("To the extent certification is sought under (b)(3), Plaintiffs certainly do not satisfy the requirement that common questions of law or fact predominate.").

Courts have ruled that the highly individualized and fact-specific issues regarding liability in Plaintiffs' asserted class claims prevent them from properly pleading a putative class under Rule 23(b)(3). *See Talley*, 222 F.R.D. at 270-71 ("Certification is not proper under [Rule 23(b)(3)] because of the individualized liability inquiries involved with determining whether each class member was denied advancement and promotional opportunities for discriminatory reasons. . . The issue of liability will depend on the circumstances surrounding each individual employment decision, relating to each member.  This will require individualized evidence as to the qualifications of the persons who applied for and received promotions, as well as the qualifications of the persons who were denied those promotions."); *Adams v. Henderson*, 197 F.R.D. 162, 164, 172 (D. Md. 2000) (granting defendant's motion to deny class certification because "[t]he issue of liability will depend on the circumstances surrounding each individual employment decision, relating to each class member," which "will require individualized evidence as to the qualifications of the persons who applied for and received promotions, as well as the qualifications of the persons who were denied those promotions"); *cf. Garcia v. Veneman*, 211 F.R.D. 15, 23-24 (D.D.C. 2002) ("Numerous cases have held that decentralized, locally autonomous subjective decision-making practices present predominately *individual*, not *common*, issues in discrimination cases. . . .  The instant case, if allowed to proceed as a class action, would quickly devolve into hundreds or perhaps thousands of individual inquiries about each claimant's particular circumstances. . . .  Even if the presence of classwide discrimination were established, individual issues would be much more important to any claimant's recovery.").

Coupled with liability, Plaintiffs' damages claims exacerbate the individualized issues that predominate over any issues common to the class.  *Adams*, 197 F.R.D. at 171-72 ("Certification is not proper under [Rule 23(b)(3)] because of the individualized liability

35

inquiries involved with determining whether each class member was denied advancement and promotional opportunities for discriminatory reasons, and the individualized damages inquiries that inevitably accompany a claim for compensatory and punitive damages."); *cf. Gray v. Int'l Bhd. of Elec. Workers*, 73 F.R.D. 638, 641 (D.D.C. 1977) ("Any relief in the form of promotions . . . would require an assessment of each plaintiff's personal qualifications, demonstrated work habits, and numerous other aspects of his particular employment history."). The need for individualized determinations of liability and damages therefore precludes Plaintiffs pleading that common issues of law or fact predominate as required by Rule 23(b)(3).[18]

Plaintiffs' Complaint does not allege any facts showing how Plaintiffs' allegations can fit plausibly within the contours of Rule 23. As the Supreme Court recognized in *Twombly*, "a plaintiff with ''a largely groundless claim'' [cannot] be allowed to ''take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.''" 550 U.S. at 558 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). Before subjecting Defendants and this Court to potentially years of protracted proceedings, Plaintiffs must provide meaningful factual allegations making it plausible that they can prevail on the class claims. Plaintiffs have not done so in their Complaint. Accordingly, their class allegations should be dismissed.

---

[18] To the extent they attempt to do so, Plaintiffs cannot overcome these issues by relying on a supposed "pattern or practice" claim because any pattern and practice allegations they purport to make are "conclusory and speculative allegations based on [ ] aspirational" goals and Plaintiffs' own alleged "three instances of discrimination," which are insufficient. *See Bradley*, 2024 WL 3905817, at *11 n.23 ("But the isolated incidents referenced here are insufficient to establish such a practice."); *cf. Garcia*, 444 F.3d at 632-33 (holding that district court did not err in denying class certification on commonality grounds when plaintiffs "failed to identify any centralized, uniform policy or practice of discrimination, notwithstanding plaintiffs "labeling [their claim] a 'pattern and practice' claim" targeting actions "of a 'single actor'").

36

## **CONCLUSION**

For all of the reasons set forth above, Defendants respectfully request that the Court grant their Motion and dismiss Plaintiffs' Complaint, in its entirety.

Dated:  May 29, 2026                                   Respectfully submitted,

SEYFARTH SHAW LLP


By:  */s/ Samantha L. Brooks*

Samantha L. Brooks, DC Bar 1033641
sbrooks@seyfarth.com
SEYFARTH SHAW LLP
975 F. Street, N.W.
Washington, DC  20004
Telephone:    (202) 463-2400
Facsimile:     (202) 828-5393

Christopher J. DeGroff, *pro hac vice forthcoming*
CDeGroff@seyfarth.com
Michael D. Jacobsen, *pro hac vice forthcoming*
mjacobsen@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive
Chicago, Illinois  60606
Telephone:    (312) 460-5000
Facsimile:     (312) 460-7000

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing Statement of Points and Authorities in Support of Defendants' Motion to Dismiss was filed by CM/ECF, this 29th day of May 2026, with electronic notification to all counsel of record.

By: */s/ Samantha L. Brooks*

Samantha L. Brooks, DC Bar 1033641
sbrooks@seyfarth.com
SEYFARTH SHAW LLP
975 F. Street, N.W.
Washington, DC 20004
Telephone: (202) 463-2400
Facsimile: (202) 828-5393

38